**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ROSE PYOTSIA, ) | |
| ) | CASE NO. 1:12-cv-00959 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Rose Pyotsia ("Pyotsia") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On January 5, 2009 and January 22, 2009, Pyotsia filed an application for POD, DIB, and

SSI alleging a disability onset date of July 25, 2008. (Tr. 17.) Her application was denied both initially and upon reconsideration. Pyotsia timely requested an administrative hearing.

On June 14, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Pyotsia, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 17.) On July 26, 2010, the ALJ found Pyotsia was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 25-26.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age forty-five (45) at the time of her administrative hearing, Pyotsia is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). (Tr. 25.) Pyotsia has a high school education and no past relevant work. *Id*.

### *Hearing Testimony*

At the hearing Pyotsia testified as follows:

- She lives alone in an apartment. (Tr. 40.)

- She has a driver's license, but does not own a car. She does not drive because of her pain medication's side effects, including dizziness and grogginess. (Tr. 40, 48.) She does not feel safe driving. (Tr. 52.)

- She graduated from high school attending regular classes. She did not attend college. (Tr. 40.) She was certified as a home health aide or nurse's aid. (Tr. 55.)

- Her last job in 2008 with a healthcare agency lasted approximately one year. (Tr. 41.)

- She had surgery in 2009. (Tr. 45.)

- She can walk one block and stand for about ten to fifteen minutes. (Tr. 46.) She

2

        can sit for about two hours before needing to change positions. (Tr. 49.)

- She is left-handed, and suffers from carpal tunnel syndrome in both hands. (Tr. 46, 49-50.) Repetitive movements bother her the most, and she wears splints at night. (Tr. 51-52.)

- She was scheduled to have bladder surgery later that week. (Tr. 46.)

- She was still receiving treatment for her back. *Id.*

- On a typical day, she wakes up around 9 a.m., showers, and then goes downstairs to eat breakfast. She sits or lays down for a few hours, and watches television. She ices her back and hips, which hurt badly. In the afternoon, she sometimes takes a nap, as her pain medication makes her drowsy. (Tr. 46-47.) Sometimes she takes two naps a day, each lasting two to three hours. (Tr. 48.) She sleeps only about three hours a night due to pain. (Tr. 47, 49.)

- She is able to wash dishes, but cannot cook or shop for groceries. Her daughter takes her to the grocery store. She must go because her daughter cannot use her food stamp card. (Tr. 47-48.)

- She can prepare simple meals using the microwave. (Tr. 49.)

- She is 5'6" tall and weighs 250 pounds. (Tr. 52.) She has gained fifty pounds since being unemployed. (Tr. 53.)

The ALJ posed the following hypothetical to the VE:

Consider [the claimant's] younger age, her 12 years of schooling, and the work that you've just classified. Assume that she would be limited to no more than ... lifting and carrying would be up to 20 pounds occasionally, 10 pounds frequently, standing would be limited to two hours a day with intervals not exceeding 15 minutes, sitting would be six to eight hours a day, intervals, about an hour each, postural would be occasionally, no repetitive or constant handling and grasping, and work should be limited to simple repetitive tasks with minimal, if any, public interaction, and she would require a fairly stable routine with minimal changes day to day.

(Tr. 55-56.)

The VE testified that there are jobs such an individual could perform, and offered assembly work (sorter, grader) as examples. (Tr. 56-57.) In response to questions by Pyotsia's

counsel, the VE testified that these jobs would not involve carrying ten pounds more than three times daily. (Tr. 57.) However, she would not be permitted to lie down, except during regularly scheduled breaks. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Pyotsia was insured on her alleged disability onset date, July 25, 2008, and remained insured through the date of the ALJ's decision. (Tr. 17.) Therefore, in order to be entitled to POD and DIB, Pyotsia must establish a continuous twelve month period of disability

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Pyotsia established medically determinable, severe impairments, due to status post fusion surgery, a back disorder, and an affective disorder. (Tr. 19.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 20.) Pyotsia was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work with certain non-exertional limitations. (Tr. 21.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Pyotsia was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been

5

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence

6

in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

### *RFC Finding*

Pyotsia asserts that the RFC determination is not supported by substantial evidence because the AL failed to include restrictions assessed by treating physician Seenam Lee, M.D., and state agency psychologist Katherine Lewis, Psy.D.  (ECF No. 15 at 9.)

**1. Dr. Lee**

With respect to Dr. Lee, Pyotsia argues that the ALJ failed to accord proper weight to his opinion as a treating physician.  (ECF No. 15 at 9-12.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled

7

to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

First, it bears noting that while Pyotsia argues that the ALJ erred by failing to ascribe significant weight to restrictions found by Dr. Lee, the record does not include an independent assessment of Pyotsia's functional limitations performed by Dr. Lee. Rather, at issue is a functional capacity examination performed by physical therapist Randall Schiff on May 13, 2010. (Tr. 626-34.) Schiff indicated that Pyotsia "ambulated for maximum of 12 minutes 46

---

[2] Pursuant to 20 C.F.R. § 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

seconds, covering .24 mile. Starting at 6 minutes she began to have moderate low back pain, left>right foot pain; she was limping on left leg.... It is not recommended to have [Pyotsia] ambulating regularly." (Tr. 632.) Schiff also found that Pyotsia sat continuously for one hour and twenty minutes without any significant increase in back or leg pain. *Id*. With respect to standing, Schiff stated that Pyotsia "stood continuously for maximum of 10 minutes 12 seconds before back and left>right leg pain forced her to sit and rest. [Pyotsia] would not be able to handle any repetitive standing." *Id*. In addition, Schiff indicated that Pyotsia "could not tolerate the standing time necessary to do any occasional or frequent lifting. Schiff concluded that Pyotsia was "functioning in a Sedentary to Less than Sedentary Work Classification, as defined by the Dictionary of Occupational Titles. [Pyotsia] would have to be primarily sitting with breaks at will to stand, move around, and probably even lie down because of her back and leg pain." (Tr. 634.) On June 4, 2010, in a form provided to Dr. Lee by Pyotsia's counsel, Dr. Lee checked a box indicating that he agreed that Schiff's report accurately represented Pyotsia's present functional capacity. (Tr. 686.) Dr. Lee also checked a box indicating that he did not believe Pyotsia could work for 40 hours per week. *Id*.

    Concerning the above evidence, the ALJ found as follows:

> As for the opinion evidence, treating physical therapist Randall Schiff noted that the claimant was limited to sedentary to less than sedentary work, but had to be allowed to stand at will (Exhibit 22F). Treating physician A. Seenam Lee, M.D. concurred with this opinion (Exhibit 25F). This assessment is supported by objective clinical findings, and the therapist's findings regarding the claimant's sitting and standing limitations are given significant weight (20 C.F.F. 404.1527, 416.927 and SSR 96-5p). However, the undersigned notes that the therapist's findings of less than sedentary capacity ma[y] imply no work. Dr. Lee previously noted that the claimant was not a candidate for gainful employment (Exhibit 9F). A finding of total disability is reserved to the Commissioner, and the objective medical evidence and activities of daily living discussed above are not consistent with total disability (Exhibits 10F, 17F, 19F, 22F, and 24F). Therefore, the

9

>findings of Mr. Schiff and Dr. Lee regarding the claimant's ability to work are given little weight.

(Tr. 24.)

The parties seemingly agree that Dr. Lee's opinion regarding disability was not entitled to any deference. (ECF Nos. 15 at 10; 16 at 12.) It is true that an ALJ is not bound by conclusory statements of a treating physician maintaining a claimant is disabled. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). "Opinions on some issues, such as [opinions that you are disabled or your residual functional capacity], are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case ..." 20 C.F.R. § 404.1527(e).

Nonetheless, Pyotsia argues that the opinion of Schiff, adopted by Dr. Lee, is not merely an opinion as to Pyotsia's employability, but also a specific opinion as to her functional limitations that required the ALJ to set forth good reasons for rejecting. (ECF No. 15 at 10-11.) The Court agrees that Schiff's opinion sets forth a number of functional limitations. "A physical therapist is not an acceptable medical source under the Commissioner's regulations, however. 20 C.F.R. § 404.1513(d)." *Waldrup v. Astrue*, 2010 WL 2490423 at *5 (E.D. Ky. June 18, 2010). Rather, a physical therapist is an "other source" pursuant to 20 C.F.R. § 416.913(d)(1), which is not subject to the "good reasons" requirement of the treating physician rule. Nonetheless, according to Social Security Ruling ("SSR") No. 06-03p, 2006 SSR LEXIS 5 at **15-16 (Aug. 9, 2006):

>Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical

10

>sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

*See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (noting that the ALJ should have provided some basis as to why he was rejecting the opinion of an "other source"); *Phillips v. Comm'r of Soc. Sec.*, 2008 U.S. Dist. LEXIS 90627 at *12 (W.D. Mich. Jul. 2, 2008) (ALJ's failure to address a nurse practitioner's opinion pursuant to SSR 06-03p amounted to error, but was, nonetheless harmless); *Hatfield v. Astrue*, 2008 U.S. Dist. LEXIS 46702 at **7-8 (E.D. Tenn. Jun. 13, 2008) (noting that "[t]he Sixth Circuit ... appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight [given to an 'other source' opinion], as opposed to leaving the decision whether to explain to the ALJ's discretion").

Here, the need to explain the weight given to the assessed functional limitations found by Schiff is reinforced by Dr. Lee's opinion that Schiff's report accurately represented Pyotsia's functional capacity.[3] (Tr. 686.) The Commissioner asserts that the ALJ adopted the sitting and

---

[3] The Court does not decide whether Schiff's opinion is converted into a treating physician's opinion by Dr. Lee's stated agreement. The case law on this issue is not altogether clear. *See, e.g., Castro v. Barnhart*, 119 Fed. App'x 840, 843 (8th Cir. Jan. 13, 2005) (finding that a treating physician's agreement with a physical therapist's conclusions did not warrant controlling weight where the treating physician did not conduct an independent examination or see the patient in two years); *cf. Ceballos v. Astrue*, 2009 WL 2475472, *7-9 (D. Kan. Aug. 12, 2009) (finding that a "team" opinion signed by physician and nurse practitioner does not

standing limitations found by Schiff and adopted by Dr. Lee. (ECF No. 16 at 11.) Indeed, the ALJ found Schiff's assessment was supported by objective clinical findings and ostensibly gave the therapist's findings regarding the claimant's sitting and standing limitations "significant weight." (Tr. 24.) It is unclear, however, how the ALJ's finding is consistent with the exertional demands of sedentary work. Schiff found that Pyotsia should not ambulate regularly and was unable to handle any repetitive standing. (Tr. 632.) "With sedentary work, a certain amount of walking and standing is 'often necessary' for periods that generally should not exceed 2 hours in an 8-hour workday ...." *Taylor v. Barnhart*, 189 Fed. App'x 557, 564 (7th Cir. 2006) (*citing* SSA POMS § DI 25001.001(B)(39)). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 416.967(a). While Schiff's assessed limitations do not precisely describe the amount of standing and walking Pyotsia can tolerate, it is difficult to reconcile his statement with an ability to stand/walk for two hours in an eight-hour workday. Schiff found that Pyotsia "could not tolerate the standing time necessary to do any occasional or frequent lifting." (Tr.

---

qualify as a treating source opinion when there is no evidence demonstrating that the statement presented to the ALJ represented the opinions of a team effort, or that the medical facility used a team approach to a claimant's mental health treatment.); *accord Nichols v. Comm'r of Soc. Sec. Admin.*, 260 F.Supp.2d 1057, 1065 (D. Kan. 2003) (although a supervising physician signed the "other" medical source's opinion, the court declined to consider them a team because there was no evidence the "other" medical source was working closely under the physician's supervision, or had consulted with the physician, and the record did not indicate the physician had treated the claimant other than a mere signature on the report); *Metivier v. Barnhart*, 282 F.Supp.2d 1220, 1226-1227 (D. Kan. 2003) (declined to find a treating team and thus no treating source when there was no evidence of a close working relationship or active supervision between the physician and the "other" medical source, and only one mention of the physician in the treatment record).

634.) According to SSA's own rulings, "'[o]ccasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10, 1983 WL 31251 at 5. If Pyotsia cannot tolerate occasional standing (*i.e.* two hours in a workday) and the ALJ credited Schiff's opinion with respect to standing limitations as being supported by objective clinical findings and entitled to significant weight (Tr. 24), then it is unclear how the ALJ arrived at the conclusion that Pyotsia could perform the standing/walking requirements of sedentary work. While the ALJ was not bound to accord any significant weight to Schiff's opinion, the ALJ, as the trier of fact, is required to build an accurate and logical bridge between the evidence he found credible and the ultimate result.

Accordingly, the ALJ's finding that Pyotsia can perform sedentary work is not supported by substantial evidence, as this Court cannot discern the reasoning behind the ALJ's decision. Without any meaningful explanation, the Court cannot reconcile the apparently contradictory findings. The ALJ found Schiff's assessment was supported by objective clinical findings, yet, without any meaningful explanation, rejected those portions of the assessment that reflect an inability to stand and/or walk for up to two hours. As such, the Court finds Pyotsia's first assignment of error to be meritorious.[4]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported

---

[4] Because the Court finds remand is necessary, the Court declines to address Pyotsia's remaining assignments of error.

by substantial evidence.  Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

    IT IS SO ORDERED.

                                              /s/ Greg White
                                              U.S. Magistrate Judge

Date: January 8, 2013